IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

DARLENE CHANDLER,                )
                                 )
    Plaintiff,                   )
                                 )
vs.                              )    Case No. 4:15-cv-00508-JHE
                                 )
CAROLYN W. COLVIN,               )
Commissioner of Social Security, )
                                 )
    Defendant.                   )

**MEMORANDUM OPINION**[1]

Plaintiff Darlene Chandler seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. 1). During the pendency of this action, Chandler filed two motions for remand.[2] (Docs. 15, 22). The latest motion invokes Sentence Six of 42 U.S.C. § 405(g) for consideration of a subsequent favorable decision by the

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 18).

[2] Chandler's first motion to remand does not specify whether it seeks remand under sentence four or sentence six. (*See* Doc. 15). Upon review, the court finds the submission is redundant of arguments previously asserted in Chandler's brief and it purports to summarize Dr. Herrera's medical records. (Doc. 15). As such, it does not clearly invoke sentence six. To the extent the motion can be construed as seeking remand under sentence four, it is **DENIED**, consistent with the rationale discussed in this court's finding that the ALJ's decision is supported by substantial evidence. *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996) (To remand under sentence four, the "court must either find that the decision is not supported by substantial evidence, or that the Commissioner (or the ALJ) incorrectly applied the law relevant to the disability claim.").

1

Commissioner. Chandler timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). Having carefully considered the record, the motions to remand (docs. 15, 22) are **DENIED** and for the reasons stated below, the Commissioner's decision to deny benefits is **AFFIRMED**.

## I. MOTION TO REMAND

Only two types of remand are contemplated under 42 U.S.C § 405(g) and they are commonly denominated as "sentence four" or "sentence six" remands. *See Melkonyan v. Sullivan*, 501 U.S. 89, 99–100 (1991) (Congress' explicit delineation in § 405(g) regarding the circumstances under which remands are authorized leads us to conclude that it intended to limit the district court's authority to enter remand orders to these two types."). To remand under sentence four, the "court must either find that the decision is not supported by substantial evidence, or that the Commissioner (or the ALJ) incorrectly applied the law relevant to the disability claim." *Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996). Under sentence six, "the district court may remand in light of additional evidence without making any substantive ruling as to the correctness of the Secretary's decision, but only if the claimant shows good cause for failing to present the evidence earlier." *Melkonyan*, 501 U.S. at 99-100.

In her most recent motion to remand, Chandler expressly proceeds under sentence six. (Doc. 22). She seeks remand for consideration of a subsequent favorable decision determining her disabled as of November 15, 2013. (Doc. 22 at 1). Additionally, she relies on medical records from her treating physician, Dr. Herrera, to justify remand. (Doc. 22 at 2). To prevail on a motion to remand under sentence six, Chandler must prove "(1) there is new, non-cumulative evidence, (2) the evidence is 'material', that is, relevant and probative so that there is a reasonable probability that it would change the administrative result, and (3) that there is good

cause for the failure to submit the evidence at the administrative level." *Culpepper v. Colvin*, 2014 WL 3889800, at *5 (N.D.Ala. 2014) (citing *Keeton v. Dep't Health & Human Services,* 21 F.3d 1064, 1067; *Caulder v. Bowen,* 791 F.2d 872, 877).

With a subsequent favorable decision in hand, it might appear Chandler meets some of the requirements for sentence six remand. The September 12, 2016 decision finding her disabled is new, "in the sense that it did not exist" on November 4, 2013, the date when the ALJ decided the case challenged here. *See Moland v. Astrue*, 2012 WL 4815472, at *2 (N.D. Ala. 2012). And, because the subsequent decision did not exist at the time of those 2013 administrative proceedings, good cause is evident. *See id*. Notwithstanding good cause and the newness of the decision, the subsequent decision cannot, on its own, justify remand under sentence six. That is because the decision is not evidence. In *Hunter v. Social Security Administration, Commissioner*, 808 F.3d 818 (11th Cir. 2015), the Eleventh Circuit rejected the notion a subsequent favorable decision, standing alone, would automatically trigger sentence six remand. Declaring "a decision is not evidence any more than evidence is a decision," the Court held a "later favorable decision is not evidence for § 405(g) purposes." *Id.* at 822. In reaching this holding, the Court reasoned:

> In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate. Because of that possibility, the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was premised.

*Id.* (internal citations omitted).

Because a later decision is not evidence for § 405(g) purposes,[1] Chandler's motion to remand cannot rest solely on her favorable determination.  Understanding as much, Chandler relies "on the medical records of Dr. Herrera submitted on appeal to the Appeals Council" in addition to her subsequent decision.  (Doc. 22 at 2).  Her reliance is misplaced.  This is so because to justify a sentence six remand, Dr. Herrera's medical records must qualify as new evidence and records previously submitted to the Appeals Council are not "new."

In her remand motion, Chandler acknowledges Dr. Herrera's records were submitted to the Appeals Council and the Appeals Council explicitly states it "considered . . . the additional evidence listed on the enclosed Order of Appeals Council," (tr. 1), which included "Medical Record from Dr. P. Herrera, dated 9/19/12-7/18/13" and "Medical Record from Dr. P. Herrera, dated 1/3/14." (Tr. 6)  (Doc. 22 at 2).  As such, the records are not new, or previously unavailable, and remand under sentence six cannot issue.  "Sentence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously considered by the Appeals Council."  *Ingram v.Comm'r of Soc. Sec.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

As discussed below, substantial evidence supports the ALJ's decision to deny benefits in this case.  And there is no indication that consideration of Dr. Herrera's treatment records, which detail improvement of her blood pressure, weight loss, and examination findings within normal limits, would have changed the ALJ's decision.  (Tr. 411-421).  Moreover, in reaching its decision the ALJ *did* consider the results of certain tests Dr. Herrera ordered.  (Tr. 371-372).  Because the subsequent decision awarding Chandler benefits has little likelihood of changing the administrative result on the first claim, it is immaterial.  As the Eleventh Circuit has recognized, "[f]aced with the same record, different ALJs could disagree with one another based on their

respective credibility determinations and how each weighs the evidence . . . [thus] the mere existence of a later favorable decision by one ALJ does not undermine the validity of another ALJ's earlier unfavorable decision or the factfindings upon which it was premised." *Hunter*, 808 F.3d at 822. Accordingly, Chandler's motion to remand pursuant to sentence six is **DENIED**.

## II.    REVIEW OF THE ADMINISTRATIVE DECISION

### Factual and Procedural History

Chandler filed her application for SSI and DIB on December 13, 2011, alleging she became unable to work beginning March 28, 2011. (Tr. 22). She was a fifty-three years old female on the date the Administrative Law Judge ("ALJ") issued his decision, and she has at least a high school education. (Tr. at 32). Her past work experience include employment as a delivery driver and a waitress. (*Id.*). The Agency initially denied Chandler's application, and she requested a hearing where she appeared in August 2013. (Tr. 40-62 & 89-90). After the hearing, the ALJ denied Chandler's claim on November 4, 2013. (Tr. 19-37). Chandler sought review by the Appeals Council, but, despite considering her new evidence, it declined her request on January 30, 2015. (Tr. 1-6). On that date, the ALJ's decision became the final decision of the Commissioner. On March 27, 2015, Chandler initiated this action. (*See* doc. 1).

### Standard of Review[3]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*,

---

[3]In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

5

402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[4] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological

---

[4]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Chandler meets the insured status requirements of the Social Security Act through September 30, 2016, and that Chandler had not engaged in substantial gainful activity since her alleged onset date of March 28, 2011. (Tr. 24). At Step Two, the ALJ

found Chandler has the following severe impairments: obesity, hypertension, anxiety, depression. (*Id.*). At Step Three, the ALJ found Chandler did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 26-27).

Before proceeding to Step Four, the ALJ determined Chandler's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Chandler has the following RFC:

> The claimant can lift or carry twenty pounds occasionally and ten pounds frequently, can sit up to six hours in an eight-hour day, and can stand or walk up to six hours in an eight-hour day. The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl. The claimant is not able to climb ladders, ropes, or scaffolds or reach overhead with either upper extremity. The claimant is not able to perform around work hazards or in concentrated exposure to temperature extremes, either hot or cold. The claimant is able to understand and remember simple and detailed but not complex instructions. The claimant is able to sustain attention or concentration for two-hour periods to complete simple or detailed tasks during the regular work day at an acceptable pace and attendance schedule. The claimant is able to respond to at least simple and infrequent changes in the work routine.

(Tr. 27.) At Step Four, the ALJ determined Chandler is unable to perform any past relevant work. (Tr. 32). At Step Five, the ALJ determined, based on Chandler's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Walker could perform. (*Id.*). Therefore, the ALJ determined Walker has not been under a disability and denied his claim. (Tr. 33).

## Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672

8

F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Chandler failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Chandler alleges the ALJ's decision should be reversed and remanded for four reasons. First, she alleges the ALJ failed to properly develop the record by failing to include the records of Dr. Pascual Herrera. Second, she alleges the RFC is conclusory and not based on substantial evidence because the record contains no Physical Capacity Evaluation ("PCE") and no Psychiatric Review Technique ("PRT"). Third, she contends the ALJ failed to state adequate reasons for not finding her credible. Fourth, she argues the Appeals Council failed to review the submissions, did not mention the submissions in the denial, and refused to remand the claim to consider the submissions; therefore, the decision was not based on substantial evidence when the new evidence is considered. None of these reasons justifies remand.

### A. The ALJ did not fail to develop a full and fair record by not including and considering Dr. Herrera's records and PCE.

It is true "the ALJ has a basic duty to develop a full and fair record." *Ellison v. Bernhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The plaintiff, however, is the party who bears the burden of providing evidence to support her claim and to provide updated evidence if it is necessary. *See id.* The ALJ does not have a duty to review evidence not before him, *Robinson v. Astrue* 365 F. App'x 993, 996 (11th Cir. 2010), particularly where the plaintiff was on notice of the need to submit the evidence and failed to do so, *see Byrd v. Colvin*, No. CV 113-219, 2014 WL 7405467, at *4 (S.D. Ga. Dec. 30, 2014) (finding ALJ did not violate the duty to develop the record where

the ALJ gave the plaintiff additional time after the hearing to submit specific evidence and the plaintiff's attorney failed to do so).

Chandler argues the ALJ should have included and considered Dr. Herrera's treatment records and PCE before rendering a decision. (Doc. 10 at 13). However, the ALJ was certainly not in error for failing to consider Dr. Herrera's PCE, conducted in January of 2014, when the ALJ's decision was rendered in November of 2013. *See Robinson*, 365 F. App'x at 996. Nor was the ALJ in error for failing to include Dr. Herrera's treatment records because Chandler's counsel knew the records had not been received at the time of the ALJ's hearing and failed to submit them during the week the ALJ held the record open for submission of the evidence. (Tr. 31, 40-42, & 61). Chandler did not submit the records until February 2014, with her new counsel's request for review by the Appeals Council. (Tr. 6 (making the evidence part of the record), 223-27 (in which Chandler's letter to the Appeals Council refers to Herrera's records as "new" evidence)). The ALJ did not violate his duty to develop the record under these circumstances.

**B.  The ALJ's decision was based on substantial evidence at the time it was made.**

Chandler contends the ALJ's opinion is not based on substantial evidence because the ALJ did not properly discuss each of his RFC conclusions in violation of S.S.R. 96-8p and the record does not contain a PCE and PRT. (Doc. 10 at 14-22). Chandler's argument consists almost entirely of extensive quotes from S.S.R. 96-8p regarding the need for a narrative discussion supporting each conclusion, for a discussion of the claimant's ability to perform sustained work activities, and for a function-by-function analysis of the claimant's capabilities.[5]

---

[5] Chandler also briefly mentions S.S.R. 96-8p's requirement that,

(*Id.* at 14-16). The extent of the accompanying "analysis" is merely a summation of the legal framework and the implied conclusion the ALJ's decision violates it. (*Id.* at 16). Chandler then goes on to state the ALJ did not include a PRT or a PCE and sets out, through a series of extensive block quotes, the split of authority on whether the functional capacity evaluation must be performed by a physician. (*Id.* at 16-20). She does not say on which side of the divide this Court should come down on this issue. (*Id.* at 20). Lastly, Chandler states her case is like *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987), and block quotes a page and a half worth of the case, without explaining exactly how her case is like *Walker*. (*Id.* at 20-22).

Beginning at the end of Chandler's argument, it is unclear how the *Walker* case is relevant. The block quote from that case addresses the ALJ's failure to discuss the weight he gave each of the medical reports, his failure to show good cause for rejecting a treating physician's opinion, and his failure to consider the claimant's impairments in combination. (Doc. 10 at 21) (citing *Walker v. Bowen*, 826 F.2d at 1000-02). Chandler does not raise any of these issues.

Second, assuming for purposes of this analysis an RFC must be based on a physician's functional capacity evaluation, the record, in fact, contains a PCE from Dr. Heilpern who reviewed the consultative examinations and the records from Quality of Life Health Services. (Tr. 70-72). He found Chandler was capable of performing the demands of light work with occasional postural maneuvers, no overhead reaching, and no exposure to unprotected heights or

---

> [w]hen there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the case record that there is such a limitation or restriction, the adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

It is unclear how this helps Chandler's argument, and she does not provide any further analysis of the issue other than to say conclusorily that the ALJ "failed to follow SSR 96-8p in finding that the claimant has minor physical limitations," (doc. 10 at 15).

hazardous machinery, or concentrated exposures to extreme temperatures. (Tr. 71). Further, the record also contains a PRT from Dr. Dobbs, a state agency psychologist, who reviewed Chandler's records and determined he had only mild to moderate limitations in the four broad functional areas. (Tr. 67-68). Even though these doctors may not have physically examined Chandler, they are still considered experts within the meaning of the applicable regulation, 20 C.F.R. 404.1527(e)(2); 416.927(e)(2)(i), and the ALJ is entitled to rely on their opinions where they are not inconsistent with the treating and examining physicians' clinical findings, *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 742 (11th Cir. 2011) (citing *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991) (finding the ALJ did not err when relying on a nonexamining physician's opinion where the underlying examining physicians' reports did not speak to the limitations imposed by the claimant's conditions)). The ALJ reviewed Dr. Heilpern and Dr. Dobbs's opinions and, finding them consistent with the medical evidence as a whole, afforded them significant weight. (Tr. 30-31).

  Lastly, it is unclear exactly why Chandler believes the ALJ did not include a narrative discussion of the evidence and the reasons for his conclusions. The ALJ's opinion gives a summary of the medical evidence regarding Chandler's physical and mental condition, (tr. 28-30); addressed the effect of her obesity on the RFC, (tr. 30); addressed the weight given to the various medical opinions, (tr. 31); and explained how the RFC was molded to accommodate the previously described physical and mental conditions, (tr. 31-32). Chandler does not point to any evidence in the record to contradict the consultative physicians' opinions regarding her capabilities in the various functional domains, and the evidence before the ALJ, at least, appears to support their conclusions. The contention, therefore, that the ALJ did not base his RFC

findings on substantial evidence is not supported by the record and, contrary to Chandler's assertions, show that the ALJ relied on substantial evidence in determining Chandler's RFC.

### C. The ALJ stated adequate reasons for finding Chandler not credible.

Chandler also contends that the ALJ failed to state adequate reasons for finding her subjective testimony not credible. (Doc. 10 at 29). Her argument begins by explaining a Fourth Circuit court had rejected an ALJ's boilerplate language finding a claimant's statements "not credible to the extent they [were] inconsistent with the [included] residual functional capacity assessment" because "this language 'gets things backwards' by implying 'that ability to work is determined fist [sic] and is then used to determine the claimant's credibility." (Doc. 10 at 22-23) (quoting *Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) (quoting *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012)). Without any further discussion (and without even quoting or citing the language she is challenging in the ALJ's opinion), she quotes three pages worth of her own testimony from the ALJ's hearing about her limitations. (Doc. 10 at 23-26). She then concludes with the unanalyzed statement "[t]he 'reasons' set out in the body of the decision by the ALJ are not adequate reasons for finding claimant not credible.'" (*Id.* at 26). Lastly, she noted the vocational expert's opinion that, if her testimony were credible, there would be no jobs she could perform. (*Id.*).

The problem with this entire analysis is there is no analysis. First, the Fourth and Seventh Circuit's problem with the language in those cases' ALJ opinions was premised on the fact it apparently compared the claimants' statements to the RFC instead of the medical evidence. *See Mascio v. Colvin*, 780 F.3d 632, 639 (4th Cir. 2015) ("Thus, the ALJ here should have compared [the claimant]'s alleged functional limitations from pain to the other evidence in the record, not to [the claimant]'s residual functional capacity."). However, the similar language

here Chandler is apparently challenging does not include the offending phrase and, instead, specifically states Chandler's statements are "not entirely credible for the reasons explained in this decision." (Tr. 29). To the extent simply citing the *Mascio* case could be considered an argument, it is unpersuasive.

Second, although Chandler's argument regarding the ALJ's reasons is, at most, a factual statement and conclusion devoid of analysis, the Court still must address whether substantial evidence supports the ALJ's reasons for discrediting her testimony. *See Walden*, 672 F.2d at 838. When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 364186 at * 4-5. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 96-7p, 1996 WL 364186 at * 4-8. If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

The ALJ relied on the medical records and the consultative examinations in finding Chandler's reports of extensive physical and mental limitations were not entirely credible.

Specifically, the ALJ noted the medical treatment notes showed that, shortly after her alleged onset of disability, she had not been taking her previously prescribed blood pressure medicine for five years, and subsequent visits indicated that, though her blood pressure remained elevated, her hypertension was largely asymptomatic.  (Tr. 29).  Dr. Henry Born's consultative physical examination found mild hypertension; a slow gait favoring her left knee; reduced range of motion in her dorsolumbar spine and knees and tenderness in her right elbow, left knee, and back.  (*Id.*).  Finding it consistent with the medical evidence, the ALJ gave significant weight to Dr. Robert Heilpern's PCE opinion Chandler could sit about six hours in an eight-hour day, stand or walk about six hours in an eight-hour day, lift twenty pounds occasionally and ten pounds frequently, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but not climb ladders, ropes, or scaffolds or reach overhead.  (Tr. 30).

Regarding her mental impairments, the ALJ noted the medical records showed only two visits, in 2009 and 2011, for depression and anxiety, resulting in prescriptions for Zoloft, Desyrel, and Vistaril.  (*Id.*).  In her March 2012 consultative mental examinations, she reported prior mental treatment but "not within the last year" and that she was still taking Zoloft.  (Tr. 30).  Dr. David Wilson opined she might have difficulty working but with medication and therapy could do so.  (Tr. 346).[6]  The ALJ gave significant weight to Dr. Steven Dobbs's PRT opinion Chandler had only mild limitations in activities of daily living and social functioning; moderate limitations in maintaining concentration, persistence, or pace; and no episode of decompensation; and could understand and remember instructions, sustain attention for two-hour periods, and respond to simple and infrequent changes in routine.  (Tr. 30 & 31).

---

[6] The ALJ explicitly acknowledged considering this opinion regarding Chandler's difficulties working but gave it little weight to the extent it could be construed as an opinion on the issue reserved to the Commissioner regarding whether Chandler was able to work.  (Tr. 31) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).

Relying on the two consultative physical and mental assessments, the ALJ took these physical and mental limitations into account when establishing the RFC. (Tr. 31). Although the opinions of nonexamining physicians cannot alone establish substantial evidence for an administrative decision, they can contribute to such evidence when, as here, they do not contradict the opinions of examining or treating physicians. *See Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985).[7]

### D. The Appeals Council considered Chandler's additional evidence, and, even in light of that new evidence, the ALJ's decision is not contrary to the weight of the evidence.

Chandler also contends the Appeals Council failed to adequately consider her new evidence and failed to give a proper explanation of its denial of review of the submission. (Doc. 10 at 26-34). She further contends the new evidence is material and chronologically relevant and that, when the new evidence is considered, the decision of the ALJ is no longer supported by substantial evidence. (*Id.* at 34-36).

Chandler cites *Epps v. Harris*, 624 F.2d 1267 (5th Cir. 1980); *Bowen v. Heckler*, 748 F.2d 629 (11th Cir. 1984); and *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780 (11th Cir. 2014), for the proposition the Appeals Council must articulate reasons for denying review. (Doc. 10 at 28). However, as explicitly explained in *Mitchell*, "the Appeals Council is not required to explain its rationale when denying a request for review." 771 F.3d at 785; *accord Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) ("[T]he Appeals Council is not required to make specific findings of fact when it denies review."). "It need only 'consider the additional evidence' that is new, material, and chronologically relevant."

---

[7] The question of whether there is still substantial evidence supporting the ALJ's decision when the additional evidence from Dr. Herrera is considered is addressed below.

*Parks*, 783 F.3d at 852 (citing 20 C.F.R. § 416.1470(b)).[8] Moreover, when the Appeals Council states it has considered the new evidence and there is nothing else to suggest the Appeals Council did not properly consider it, there is no basis to second-guess the Appeals Council. *Mitchell*, 771 F.3d at 783; *Parks*, 783 F.3d at 853. However, even when there is no other evidence in the record to suggest the Appeals Council did not properly consider the new evidence, "a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." See *Mitchell*, 771 F.3d at 785 (citing *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262 (11th Cir. 2007)). If the ALJ's decision is "'contrary to the weight of the evidence currently of record,'" the Appeals Council's failure to review constitutes an error of law requiring remand. See *Ingram*, 496 F.3d at 1261 (quoting 20 C.F.R. § 404.970(b)).

Because the Appeals Council explicitly stated that it "considered . . . the additional evidence listed on the enclosed Order of Appeals Council," (tr. 1), which included "Medical Record from Dr. P. Herrera, dated 9/19/12-7/18/13" and "Medical Record from Dr. P. Herrera, dated 1/3/14," (tr. 6), it was not required to provide more and did not err by failing to articulate reasons for denying review. The question is whether the Appeals Council's decision to deny

---

[8] As further explained in *Mitchell* and *Parks*, the *Epps* and *Bowen* cases do not require the Appeals Council to provide a detailed rationale for denying review on new evidence because the *Epps* court was in a different procedural posture, addressing the Appeals Council's failure to adequately evaluate the evidence before affirming the ALJ's decision (after having already granted review), and the *Bowen* case only requires the Appeals Council to apply the correct legal standards in performing its duties. See *Mitchell*, 771 F.3d at 783-84; *Parks*, 783 F.3d at 853. Moreover, in both *Epps* and *Bowen*, there were indications on the record the Appeals Council had erred. See *Mitchell*, 771 F.3d at 783-84 (explaining that, in *Epps*, the ALJ's decision was based on the fact there was none of the particular type of evidence that was submitted to the Appeals Council and that, in *Bowen*, the ALJ had erred and the Appeals Council had adopted the error without explanation, indicating in both cases that the Appeals Council had merely "perfunctorily adhered" to the ALJ's decision).

review was in error because the new evidence made the ALJ's decision contrary to the weight of the current evidence.[9]

Chandler's additional evidence consists of Dr. Herrera's treatment records and a PCE he prepared. (Tr. 411-26). A treating physician's opinion is generally given controlling weight unless it is not supported by objective medical evidence or is merely conclusory. *Robinson v. Astrue*, 365 F. App'x 993, 996 (11th Cir. 2010) (citing *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987)). Even where the Appeals Council does not state its reasons for denying review in the face of a treating physician's opinion, the reviewing court makes this determination *de novo* to determine whether the Appeals Council could properly have denied review. *See, e.g.*, *id.* at 997 ("[T]he Appeals Council was free to discount the treating physician's opinion concerning Robinson's walking limitation because that opinion was inconsistent with the physician's other assessments and with other substantial evidence."); *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011) ("The [Appeals Council] was free to give little weight to the conclusory assertions contained in the questionnaires because they merely consisted of items checked on a survey, with no supporting explanations."). Because this Court's review of this evidence is *de novo*, the Appeals Council will not be found to have erred if the treatment records would not change the ALJ's decision and there was good cause to discount Herrera's PCE. *See Ingram*, 496 F.3d at 1262 ("[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."); *Mansfield v. Astrue*, 395 F. App'x 528, 530-31 (11th Cir. 2010) ("The

---

[9] This is not the same as the determination of whether to *consider* the evidence, which requires a determination of whether the evidence is (1) new, (2) material, and (3) chronologically relevant, *Ingram*, 496 F.3d at 1261. The Appeals Council already acknowledged the evidence is new, material, and relevant when it "considered . . . the additional evidence," (tr. 1), before subsequently determining whether to grant review based on that evidence, (tr. 2).

district court did not err in determining that the additional evidence Mansfield submitted would not have changed the outcome of the ALJ's decision.").

First, Dr. Herrera's treatment records detail improvement in Chandler's blood pressure after beginning her treatment, only conservative treatment of moderate pain, loss of weight, and examination findings "within normal limits." (Tr. 411-421). Similarly, the tests Dr. Herrera had done on Chandler's neck and shoulder showed only mild abnormalities. Specifically, the neck MRI showed only "minimal disc protrusion at C3-C4 and C5-C6 levels slightly effacing the thecal sac but no significant stenosis or cord encroachment" and "very minimal broad base disc bulge at the C4-C5 level" with no stenosis found, (tr. 422), and the left-shoulder MRI showed joint degeneration that "mildly encroaches the underlying soft tissue structures" with "no rotator cuff tear or other significant abnormality," (tr. 423). Moreover, these tests were in the original medical records the ALJ considered for his opinion. (Tr. 371-72). There is nothing to indicate the treatment records would have changed the ALJ's decision.

Similarly, the PCE submitted is merely a questionnaire in which Dr. Herrera submitted his conclusory opinions by way of circles and checkmarks in response to often leading questions. (Tr. 426). He does not cite to medical findings or other objective evidence to support those opinions or the proposed limitations. (*Id.*). Moreover, his own treatment notes indicate Chandler's neck and shoulder conditions were mild and treated conservatively, treatment improved her blood pressure issues, and her physical examinations were otherwise within normal limits. (Tr. 411-21). The Appeals Council was within its rights to discount Dr. Herrera's questionnaire and rely on the evidence already before the ALJ. Therefore, the new evidence does not render the ALJ's previous decision erroneous, and the Appeals Council did not err by denying review.

## III. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Chandler's claim for SSI and DIB is **AFFIRMED** and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 30th day of September, 2016.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE